to the next case, which is California Insurance Company v. Lara and Applied Underwriters v. Mr. Kaplan. Afternoon, Your Honor. May it please the court, my name is Sam Kaplan and I represent plaintiff appellants in the two matters before the court. I respectfully reserve five minutes of my time for rebuttal and we will keep track. In the words of the Supreme Court in Sprint and Pactel, the federal court's obligation to your cases in their jurisdictions are truly unflagging. The purpose of section 1983 is to provide a federal forum for claims of unconstitutional treatment at the hands of state officials. Erroneously departing from these principles, the district court declined to reach the merits of plaintiff's claims based on a misapplication of the doctrines of prior exclusive jurisdiction and younger abstention. This court should therefore reverse. Prior exclusive jurisdiction doctrine applies only where you have two parallel- Can you back up for a minute? Can you tell us what the status of any state court litigation is? Yes, Your Honor. The rehabilitation plan hearing is currently scheduled for February 17th, 2022 and it's my understanding, although, it's my understanding that that date may very well slip because of ongoing disputes and the amount of things that would have to be done prior to then. There's currently ongoing disputes over discovery, over privilege law, but I can't say that with certainty. Thank you. You're welcome. The he or neither proceeding is in rem or quasi-in rem. The federal court proceeding is not in rem. We do not ask the federal court to seize and control any property or ask it to adjudicate claims to property against the whole world, such as an acquired title act. Instead, plaintiff's claims are in persona. Section 1983 claims that the state officials, the defendants, have violated constitutional rights. Don't you ask to, isn't one of the remedies requested to order the commissioner to dissolve the conservatorship? Not, not in those terms, Your Honor. One of the forms of relief, and I believe the form Your Honor is requesting to, would require the conservator to apply to the state court and to end the conservation, yes. That is, that's the injunctive relief we seek with respect to the conservation. An alternative form of relief that we seek would be declaratory relief. And in that instance... So, so counsel, why isn't that an in rem proceeding when it puts the assets back in the, back, puts CSE back in control of its assets? Isn't that an in rem? Because we, we look to the gravamen of the complaint, not to the specific statute that you're relying on, right? You're correct, Your Honor, that you look to the gravamen of the complaint. Absolutely. The answer to Your Honor's question is that the, um, any order distributing property will only occur, uh, by virtue of the state court's order, uh, under the, under the claims that we seek. So, for example, if there were a declaratory judgment that the initiation and the maintenance of the conservation were unconstitutional, what would happen is, uh, the, that would then be asserted in the, that would be an infrastone on judgment that would be asserted in the state court proceeding. And at that point, the state court would evaluate that. And we certainly expect that what the state court would do is grant, uh, is, uh, is to order the dissolution of the conservation, but it would be the state court judgment that would do that. And, uh, and that is no different, Your Honor, than lots of infrastone on cases, cases that we cite, the Hanover case, Commonwealth case, where the desire was certainly to obtain property over which the state court had jurisdiction, but ultimately it was still viewed as an infrastone on judgment. Just because it binds the state court based on state principles of race judicata does not make the infrastone on judgment in rem. And viewing it that way, Your Honor, would, uh, and just all you really need to rely on is, uh, is the doctrine here, but a categorical, just the standard prior exclusive jurisdiction doctrine, I could end there, but I would know that a categorical bar on federal court involvement in in rem proceedings would be entirely incompatible with the text and purpose of section 1983. There's not even a bad faith exception in the doctrine as there is in the younger extension, which we'll get to shortly. Uh, and it's incompatibility is particularly stark in a proceeding that delegates so much power to the executive branch to infringe on liberty as this one does. If you look, Your Honor, at, for example, at what the executive branch, the defendants urged on the conservation court in this case, they told the conservation court, this is the, got the conservation as long as they made a finding. There's no, the state court didn't even get to independently evaluate the finding. They also told the state court that they had to defer to the, to their determination, dependents determination, the executive branches determination as to whether to pursue the drastic remedy of a conservation over an injunction. Defendants cannot invoke a doctrine built on avoiding conflict with the decisions of state judges based on judicial comedy. When defendants have successfully told the state judges they need to defer to defendants. The also Your Honor, many of the claims focus on the rehabilitation plan conditions, not the conservation itself. So even if the court were concerned about the relief sought with respect to the conservation itself. Pardon me, Mr. Kaplan, is it your position that in order to accept the petition for conservation, the commissioner here doesn't have to show that there is any danger to the assets of the company? Absolutely. Your Honor, that is a hundred percent our position, but that's not, that's not what occurred here, is it? I mean, the commissioner didn't say, uh, I just want to take over the company and I don't have to show that there's any injury or a possible injury to the shareholders and policy holders. I just want to take over the company. Your Honor, but what I, and let me be, let me be very clear about what I'm saying. They, um, what they told the court is, uh, there is this, there is this danger we have and they had to prove that they had to bring evidence that there was a danger. So the court could find that regardless of the degree of discretion that it gave the commissioner that there was an impending danger to the assets and policy holders of the California insurance company. Otherwise the court couldn't grant the conservatorship. It is the difference, your Honor, between deferring to the fact that they have made a finding and independently evaluating proof of the finding, independently evaluating the finding. And if your Honor looks at SDR 11 paragraph 20, you'll see that the commissioner cited case law saying that they did not have to prove there was a hazardous circumstance. They only had to say that they made a finding that there was a hazardous circumstance. Your position is that there was never an opportunity to challenge that finding? There was an opportunity in the motion to vacate, your Honor, at which point the burden was on us. But even, even if your Honor assumes there was a basis for that finding, they still get complete deference as to whether to choose a conservation over an injunction. Our clients, the CIC was willing to agree to an injunction. What this case is about is the choice to pursue the remedy, the drastic remedy of a conservation over an injunction. Now, your Honor, pardon me, CIC was willing to agree to an injunction to stop what? To stop the merger with the New Mexico merger that supposedly provided, that was the sole basis for the claim of a need for a conservation. They claimed they would need to lose their certificate of authority. And the key fact here, your Honor, is when they told us, and this is in the complaint, when they told us, when they were, when they told CIC, we don't want you to do this, please don't do this, don't file that certificate of merger, CIC stopped, they didn't. Weeks went by and suppose, and we, and CIC thought that they were going to be talking with the commissioner during that period, and they said they were going to be negotiating, but the commissioner instead was in secret preparing this application for a conservation. So no proceeding really was necessary at all here. So what do you, what do you claim, Mr. Caplan? You claim some sort of skullduggery here. Now what was the skullduggery? Why was the commissioner not accepting the injunction to the merger and requiring a conservatorship? Is that because they're trying to bring some pressure on you to settle the equity cases? A hundred percent, your Honor. This was a, this was a result of a longstanding dispute that they didn't like the settlement, or at least officials didn't, the commissioner didn't like the settlement that they had entered into, and they were using both the merger itself, the original acquisition, they were holding it up in order to exert pressure, and then they were, they ultimately used the conservation, because it's the only way they could do it. Are you claiming that the commissioner was in any way corrupt? Uh, corrupt is, is not, is not necessarily the word I would use, but we would certainly say bad faith, your Honor, as we have. What was the basis of his bad faith? Was he taking money for his political purposes from the plaintiff's attorneys in the equity cases? Uh, no, your Honor, although they have worked closely with the plaintiff's attorneys, but not money. That's not what we- In other words, they were trying to get more money for the plaintiffs in the equity cases, and that you're saying that they were illegitimately doing that, but not for any nefarious purposes, personal purposes. Is that what you're basically saying? Yes, yes, yes, personal, uh, yes, it, it, to retaliate based on the, on First Amendment activity, absolutely, but not, not corrupt, no. What was the First Amendment activity, by the way? The right to petition, uh, which this court has recognized in the Duluth case includes the access to the courts. What, what right to petition, in what case? All of the cases, all 40 cases that they're seeking to force them to settle. The- How were you precluded from petitioning? I don't understand that part. They're trying to force them to settle, but they're trying to just completely cancel the cases by, uh, by imposing it through this rehabilitation plan. That seems like a very weak claim, but that's not what we are dealing with right now. Correct, it, it, I agree, your Honor, it is not what you're dealing with at the moment, um, but I would note, your Honor, that the, the, this court has, the Ninth Circuit has held that even the destruction of evidence, uh, violates the right of access to the courts. Rather, this is- They weren't destroying evidence. They weren't, weren't stopping you from talking, telling anybody anything you wanted to tell them in the, in the litigation, as I understand it. Um, they were putting pressure on you, uh, but they weren't precluding, but it's not relevant. Um, what about the Bank of, of New York case, um, the old Bank of New York case for the Ninth Circuit in, in, with regard to whether the, the current proceeding is an NREM proceeding? The Bank of New York case, your Honor, sought a direct order to deliver the property to the United States. Uh, that, so that alone differentiates, but that is definitely, that was definitely an NREM order. That's not what we seek here. We seek an order that would be filtered through the state court. And your Honor, uh, even again, if there was any issue with the initiation and maintenance of the conservation, the, uh, even if your Honor had concerns about that, there's, there, they seek, we seek relief with respect to the rehabilitation plan and, uh, and there are, there are property and liberty interests at stake here that are not even arguably part of the conservation estate. And so the prior exclusive jurisdiction couldn't possibly apply to those. Turning to Younger, your Honor, um, the, uh, there, Younger doesn't apply for three reasons and, uh, short on time, but I'll go through them as quickly as I can. The first of all, conservative, it, Younger does not apply to, at all to proceedings such as this one. We present numerous reasons why in our brief, California law says that this is an entirely different type of proceeding. Uh, their own law says this. They are not brought to sanction. They've never been used outside. They've never been used outside, never. Since 1935, they've never been used outside of insolvencies or impending insolvencies. They don't have a close relationship with criminal law and they're fundamentally- But the statute clearly so provides. I'm sorry? The statute so provides and- The statute authorizes, your Honor, that, uh, it does allow, your Honor, that it can be outside of insolvencies. Uh, we certainly recognize that. Except that section, the section 1215.12 for the Insurance Company Holding Act, the violations that are at issue here, that is confined to, uh, financially troubled companies. And there is no, there is a broader provision in 1011C from 1935, uh, that, uh, that is not so confined. But the more recent statute, the statute that applies to the precise violations that purportedly provided the basis for the conservation here is confined to financially troubled companies. There's no close- Why isn't there, counsel, why isn't there an analogy there? I mean, you're talking about, um, uh, conservation that's imposed that basically gives the state control over, you know, whether it's persons or property to prevent violations of state law. Isn't that the classic case for younger abstention? Uh, no, well, no, your Honor, uh, it isn't. Uh, the, uh, for, for the reasons that we talked about, this is not a civil enforcement proceeding. It is, uh, it is a proceeding that is designed structurally for financial triage. It is fundamentally different in numerous ways from criminal proceedings, procedurally, structurally. California law says that this is not a proceeding about prosecuting, uh, wrongs because it is not an action. It is a special proceeding. Actions include criminal and civil proceedings, uh, and this is something different. California law says that. And it's- I don't understand. It is not- You kept saying that in your brief, and I don't understand the point. Maybe you could try a little harder on why it matters. For purposes of 1983 coverage, that this is a, a third kind of action under California law. What's the relevance of that? Do you mean, your Honor, uh, for purposes of younger? You said- For purposes of younger. Yes. Yes. Um, the reason, Your Honor, is that if you look at the definition of action, it is what we would all view as civil enforcement proceeding, as a civil enforcement proceeding. So this could be a special civil enforcement proceeding. I don't see how it helps you with regard to the 1983, to the younger issue. The classification, Your Honor, perhaps, you know, by itself would not be dispositive, but it's not brought to sanction. Uh, that is not its purpose. It ends the minute the, um, the, whatever is going on is fixed. It's never been used outside the context of insolvencies. It's not a penalty. It's not a fine. It's not, um, you know, so what are some examples of civil enforcement proceedings that have been found to be covered by younger? Ferrara is an example, Your Honor, that was- Substantively. Substantively. What are the, what's, what's the substance of those cases? Oh, oh, I'm sorry, uh, the, uh, nuisance proceeding, Your Honor, where you could get civil penalties, they had a burden of proof, um, same with Bristol-Myers, it was a deceptive trade practices. Again, you have the burden of proof, you have to prove something, you can, and then you get penalties, civil penalties. Wasn't, wasn't Middlesex in one of those cases a state bar sanctioning proceeding? Attorney disciplinary, which the court- Right, which was disciplinary, but it was not a question, it was essentially preventing him from practicing law, suspending him, why isn't this similar to that? It was, again, Your Honor, it was a standard proceeding where they were, uh, they had a burden of proof and there were sanctions imposed, disciplinary sanctions. The court called it quasi-criminal. That is not this proceeding. They specifically chose not to bring it as, uh, as a civil enforcement proceeding. They, they chose this summary method, uh, and it's, they chose a method that is designed for, um, financial triage for, uh, companies that in financial distress, uh- But that's a very weak argument because the statute says yes and other circumstances do, and these circumstances presumably are one of them. I mean, you, you, you dispute the underlying facts, but, but they weren't alleging, they were alleging a, a element of the, of the statute, which is not financial distress, right? Uh, they were not relying on financial distress. Right, they were not. What were they relying on? Uh, they were relying on the, uh, on merging without authority permission. Right. Okay. Um, but the, um, Your Honor, because I have limited time, uh, uh, I'll, uh, I will just note that for all of those reasons, uh, the, um, they, uh, it, it's not akin to a criminal prosecution, but the, I would, I don't want to, for middle sex, uh, they don't meet the middle sex. Well, actually, Your Honor, because of my limited time, I would like to, I guess I would like to go to bad faith, um, the, um, but with maybe just a brief word at the end on middle sex, Supreme Court has made clear from the beginning that Younger does not apply to proceedings that, that apply in bad faith. Numerous courts of appeals have recognized that bad faith includes retaliating, bringing a proceeding to retaliation for the exercise of constitutional rights. Uh, this court has established a standard for, uh, for retaliation in this type of proceeding. Uh, and, uh, we amply have alleged facts to meet that standard and the district court has failed to apply that stamp. And it is that simple for why, uh, just on the bad faith issue alone, this case must be reversed and remanded the, um, going back to middle sex, Your Honor, uh, two reasons there, uh, there has to be a substantial state interest. The California legislature has told Your Honors in several ways that there is no substantial state interest. 1215.12 makes clear that you can only bring it, uh, bring a conservation where there's a financially impaired, uh, impaired company. There's not been a single instance where they have had a need to use the, uh, this proceeding to, uh, outside of the context of financial distress in the entire history of California. Uh, and then finally, Your Honor, we have made a very detailed showing of, um, that why the procedures here did not allow at a minimum for the presentation of the unconstitutional retaliation claim. And, uh, the, uh, defendants responded exclusively with generalities. I thought you said that, well, first of all, they cited some cases, as I recall, in which, um, conservatorship litigation did reach constitutional issues, didn't they? Oh, yeah. Our claim is not, to be clear, our argument is not that you are barred from using the words constitutional in these proceedings. But what matters under Middlesex is whether the particular claim can be brought. And we explain in detail in our briefs why it is that these proceedings are structurally, uh, prevent, uh, presentation of a fact-based claim of unconstitutional retaliation. And I, I could explain it here, but obviously I'm over my topic. Well, I have a question for you, Mr. Kaplan. You mentioned that the bad faith ex, exception to Younger, um, should apply, but I don't remember you telling me what factual basis there is for your claim of bad faith. Uh, Your Honor, uh, it, I, I, I did not, you're correct, and the reason I didn't is because of limited time. I, I could go on for a long time about that. It is in our complaint, um, and, um, and I could give Your Honor a lot of, uh, How about a one or two sentence summary? We'll give you time to do that. Okay. Um, uh, there are numerous indicia in the complaint that this was not brought because it was, uh, this was not brought about, uh, because out of concern for the consequences of a merger, uh, of, of, that, that they would merge without authority. Um, weeks went by with where we listened and, and we said, fine, we're not, we're not going to merge without authority. And yet they sought this, despite the fact that there was this agreement, they sought the conservation in order to, um, they, they, they sought the conservation, uh, despite this agreement, despite this agreement that we were supposed to talk to them. And, um, they knew that, uh, they knew that we had agreed, they knew we had stopped and yet they sought the conservation anyway. For what reason did they seek a conservation knowing that you were not going to merge without their permission? Because the conservation gave them enormous power, Your Honor. To do what? To force the settlement of the equity comp litigation. Ah, they're pressuring you to settle the equity comp litigation. Forty cases that they didn't want you to try, they wanted you to settle and pay off. Right? On disadvantageous terms that had been, that unjustifiably disadvantageous terms that benefited the plaintiffs. Absolutely. Okay. I got you. Thank you. And did any, okay. Did anybody, just one last question. What, I, well, I, I presume it's in the complaint, but what, what evidence you allege that if you had done that, they would have looked at the conservatorship? If we had settled the claims, Your Honor? Is that the question? Yes. That's the question. Um, we, we definitely allege it, uh, in the complaint, Your Honor. In fact, they, uh, they threatened, um, we alleged in the complaint that they threatened, uh, that if we didn't agree to their terms on settling the claims, that they would make them much worse. And then they, and they followed through on that threat when we refused, uh, when we refused. I know. But what's the connection to the conservatorship? Well, it's only the, through the conservatorship, Your Honor, that they were able to impose these settlements. They never, they, they don't have the authority to just impose settlements in private litigation without. I see. Because they were, they were now in control. They could impose the, the settlements. That's what you're saying. Absolutely. All right. Thank you very much. Um, and we will give you a couple minutes to rebuttal. Thank you. Because we took up your time. Yes, sir. Mr. Stromwasser. You're on mute. I think we would learn. Thank you, Your Honor. And, uh, may it please the Court, Michael Stromwasser for, uh, for, uh, appellees. Let me start with the questions that have just been discussed about, uh, why we are in a conservation. And the facts are, these facts are in the, in the supplemental record and I can give the Court sites to it if you would like. But the key point is this. The owner of CIC's parent company, which had been, uh, the majority of interest had been held by Berkshire Hathaway, wanted to buy out Berkshire Hathaway. That is a transaction that, that falls under the Commissioner's authority. They cannot do it without the Commissioner's approval. Uh, the, they submitted what was called a form A. They were required to do that. The Department found that there were material misstatements and inadequacies. And so the, the, the owner, Mr. Menzies submitted additional ones. He had entered into an agreement with Berkshire to buy out the, the, their interest and put a time limit on it. And it was a time limit shorter than the time that the, that the statute gave the Commissioner to deal with the form A. As it got closer, the, it became clear to him that he, he felt that the, that the, that the, uh, Commissioner would not give him timely approval. And therefore, he just closed the merger without approval. And now, having had what he thought were regulatory difficulties, he decided he was going to leave California. And so he created this subsidiary, CIC2, which is the plaintiff in, in the second case. So just to stop for a minute, so just so I have the story straight. Mr. Kaplan says that they didn't, uh, um, complete the merger and that they, um, were in negotiations and that they told the Commissioner that they, they wouldn't, uh, until there was some agreement and they were in negotiations. That's just not true or what? Yeah, to be fair, he, he, uh, it's a misunderstanding. There are two transactions here. The first transaction was buying out Berkshire Hathaway. They closed that deal without Commissioner's approval. That then started a second, there was then a second transaction in which they were going to re-domesticate the company from California to New Mexico to get out from under the California's jurisdiction and get home free. In other words, at the time the conservatorship was opposed, there was already a merger that didn't comply with California law. Absolutely right. And so we knew that they had set up this shell company. We knew they were, that the, uh, that the getaway car had the engine on. And we knew that the only way we could be sure to protect policyholders, because if they completed that merger, that, that second transaction, their certificate of authority to transact business in California would be revoked by operation of law. Thousands of policyholders would not have an admitted insurer to transact the business of those policies. Those are workers' comp policies. Those employees would not be able to call on a valid insurance policy for their health and other benefits. So there was a determination that they had to, we had to protect the policyholders and freeze the situation until these protections could be put in place. What about Mr. Kaplan's statement that they were willing to agree to an injunction against the merger? The commissioner had completely lost faith in their ability, their willingness to deal with us with integrity. And this is a, this is a billion dollar company. And there was a concern that they could do it later and then try to clean up afterwards and it just wouldn't be enough. And so this is exactly where, you know, this is why 1011C is where it is. You can conserve a company if they are threatening to move their assets out of state. There was a threat to move out. We did not have any confidence in them. We didn't trust their integrity, that they would keep their word. And so we, so the commissioner decided to impose a conservation. Then, once it was imposed, we quickly started talking about how to get, how to resolve these issues. And conservations are typically resolved in one of two ways. Either a liquidation, which was not called for here because they're not insolvent, or a rehabilitation plan to cure the problems. And the, so the commissioner developed a rehabilitation plan. I'm loath to talk about the negotiations, but we had nine months of negotiations about it, which were supposed to be under confidentiality. Pardon me, Mr. Strumwasser, I'm missing something. What was the problem that the rehabilitation plan was supposed to cure other than making sure that CIC paid the equity claims in settlement? Yeah, there were a bunch of problems, but there were two major problems. The first is that they wanted to leave the state. We wanted them to leave the state, but we had to allow, we had to provide for those policies that would then have been stranded. And so there is a proposed, and I emphasize it's proposed, excuse me, proposed rehabilitation plan, and it provides for those policies to be assumed and reassumed and reinsured by another admitted insurer. So that's the first part, to get the policies out. The second concern was that the commissioner was aware that there have been, there is this litigation, the litigation has a history, and I can refer the court to the record of litigation is that CIC had an approved rate for selling workers' comp insurance. That was a fixed rate. It was provided, it was then sold to these policyholders. They bought a fixed price CIC policy. After that, the policyholders were required to sign a second agreement, a second contract called a reinsurance participation agreement that was not approved by the commissioner that varied the terms of the filed rate, including the price terms, and that the company then started charging them above the rates that the filed rate had. The commissioner received complaints from policyholders. Under California law, those complaints are subject to a hearing. There were administrative hearings. The commissioner concluded that this signed agreement was illegal, void, and could not be enforced. There was then a, and then that decision was made final. CIC then said, we'll make a deal with you. We won't appeal, but we want to pursue this litigation against the policyholders. That was reduced to a settlement agreement that said, yeah, there's a disagreement about what the remedy is for these illegal charges, and we'll, we're willing to let you pursue state litigation. But that same settlement agreement said that we are not waiting any of our rights to bring any action in the future. Over the next two years, three California, three different California appellate courts issued, published decisions holding that the RPA was illegal and unenforceable. Nevertheless, the company continued to press its claims against the policyholders and sue them for, or seek arbitration sometimes out of state. All right, so, but this was not the basis for the conservatorship, nor could it have been. Is that right? Absolutely right. This was a, that was not the basis for the conservatorship. It is one of the things that is proposed to be addressed in the rehabilitation plan, and that is going to, going to go to the superior court judge for determination whether the, whether he has jurisdiction and whether there are good grounds to use it. That's all to be litigated before a judge. And presumably that is in the conservatorship now because if they leave the state, you want to get that resolved before they leave the state, essentially. That's right, exactly. All right, let's go to the issues of the case. Okay. I would prefer that you start with the, I myself would prefer that you start with the primary exclusive jurisdiction issue. Before you get to the prior exclusive jurisdiction, can I take a moment of your time to follow up on one of my colleagues' questions to Mr. Kaplan regarding the status of the state court proceedings? Are you now at the tail end of discovery in that case? We are, here's how far we are, and I think this is illuminating also for just how thorough a due process these guys are getting. There was a discovery motion. There was a discovery, there was a fight about discovery. They have received about a thousand documents. About 500 or so remain to be addressed. The court required us to file a supplemental privilege log, which we have done. And there's already a hearing set on the privilege log. There will be some documents either will or will not be produced. And then we have agreed to produce four witnesses for deposition. Then they will be filing their brief in opposition to the rehabilitation plan. We will file our responding brief in favor of the rehabilitation plan, and then we'll go to court. All right. That's fine. I just wanted, my sense was that you were well into almost the tail end of the discovery process. Their basic contention on the other side is that they will never get to raise their First Amendment retaliation claim in state court. Is that true? No. In fact, they at one point, one of the reasons why this case is taking so long is at one point they filed an anti-SLAPP motion to claiming that the conservation was interfering with their constitutional rights of free speech. And under California law, that then froze the... And it was heard on the merits, or it was denied because it isn't pertinent to the... It was denied because the anti-SLAPP statute does not apply to conservations. Well, so they didn't have the right to raise it that way. So they have the right to raise it in some fashion. Absolutely. There is nothing to prevent it from... And at times they have, in fact, they have used phrases like due process and First Amendment. They just haven't tried to actually develop a claim. And I think the reason is they've decided that they'll be better off in federal court than in California courts to have that... So if we can now go to the prior exclusive jurisdiction and let me jump all the details and say, doesn't the... What concerns me is assuming that one threads one way through the case law and concludes that these are both inbred proceedings, which perhaps you can do. There is some resonance for me to the notion that there has to be some sort of limit to this for 1983 purposes and the ability to raise 1983 issues in federal court. Something like the Rooker-Feldman exceptions for bad faith or for instances in which the state proceeding is not particularly directly at stake or the Younger v. Harris bad faith exception. I gather there's no case law so halting, but there's no case quite like this either. So do you think there is some or should be some situations in which there is an entree to federal court with some kind of parameters? Certainly, I can imagine a case in which a prosecutor, for example, seizes... I mean, we have a couple of interesting cases that are cited here where they have seized arguably pornographic materials. And one can say that that has some interim quality to it. But the core question in all of these cases is whether or not there is a state forum to hear the 1983 type claims. And in this case, there is that forum. There are other cases in which there hasn't been. For example, in the Cram case, which I understand is an abstention case, but still the point is that the prosecutor managed to keep frustrating the state court's ability to enforce the rights of the federal plaintiff. He lost the first seven cases. He brought 10 more cases. He brought up 100 cases eventually. And he started holding press conferences to, in his words, educate the public so they'll be better jurors and would have quit in the future. That's an obvious abuse. And to the extent that might be in rem, I think that every court in California would understand that it has to entertain those claims. But that's not what we have here. There's no record here to support that kind of an action. My second question on the prior exclusive jurisdiction is that the complaint here, let's say that the request for the conservator to go to the state court to lift the conservatorship is cleverly structured because it isn't directly addressed to the state court but probably may come within the in rem exceptions. But what about the other claims for relief? Why are those in rem proceedings? Other than dissolving the conservatorship? Yes. Because the litmus test for whether something is in rem is does it interfere with the ability of the other court to exercise its powers over the res that that other court is holding that would essentially defeat that court's in rem jurisdiction. The state court has in rem jurisdiction over all the assets of this company. And whether it's declaratory or injunctive or something else, then whatever it is, the relief they asked for is that the state court lose its jurisdiction over the res that the estate be distributed back to the pre-conservation courts. But let's suppose there was a complete denial of due process. Suppose the statute said we can take the company to conservatorship and that's it. They can't ever say another word. Would there be a 1983 action then? I suppose so. But I think we have to be careful about that because the courts have actually leaned over backwards to make sure that there is no opportunity. For example, in Baffert, there was an administrative there's a provision of the California Constitution that says that Article 3, Section 3.5 that says an administrative agency cannot declare an unconstitutional statute unconstitutional. The agency cannot. And Baffert said that's okay because when they get to court, that provision doesn't apply. The court can do it. Or in Lebos, L-E-B-B-O-S, this was an unlawful detainer action and the statute said that. Right, but the question is whether they can go to federal court to complain about it. And suppose their position is, well, that's not good enough. That's not due process. It drags it out too long. They can't go to federal court to raise that question by suing the people who are taking this position, not the court? Well, certainly not until you've gone to the state court and said, look, this is taking too long. It's violating my due process. And let the state court determine that. That's what we're supposed to be doing. And there's no reason to believe that a state court can't entertain that. And, in fact, as the cases say, it is derogatory. I mean, these kinds of issues arise all the time with regard to the efficacy of state proceedings of other kinds. I mean, I had a forfeiture case recently where the state was seizing a car in a forfeiture, and we certainly didn't have any problem with adjudicating whether there was a due process violation or not. And so you're carving out a special rule for what we're calling in rem proceedings. And I'm just a little dubious that it can go all that far when there are people involved. I mean, there are live bodies who are doing this, and the question is why can't they sue the live bodies and say stop doing this? Forgive me, I'm not familiar with the asset forfeiture statute, and I am not in a position to respond. I'm not saying that that has anything to do with it. There was no in rem issue there, question raised there. My point instead is that federal courts are generally open, at least with barriers, to claims of the lack of due process in state proceedings. And your contention is that where the state proceeding is, and let's assume it is an in rem proceeding of this kind, you can't sue the individuals who are prosecuting that proceeding, which is what they're doing here. They're not going directly after the race, to say that you're violating my due process rights or my First Amendment rights or whatever, almost under any circumstances. Well, yeah, and I don't know. First of all, I don't know what circumstance it would take to get that, and I don't think this record would be a good one in which to craft that text. But two observations about the conservation matters. The first is that this is a specialized kind of proceeding with some very unusual characteristics. One is, of course, the nature of insurance and the role that historically and statutorily states play in regulating insurance companies. Another is that the dispute is never about one person. It's never about people versus a certain automobile. It's a res for which, whether it's solvency or something else, there are competing claims among thousands of people. And to have any one of them or all of them to be able to go into federal court and say, look, I've got a claim here, and they're taking too long, and this is due process, and I need to have the court intervene, that would be a, this is a bad kind of case for an exception to the in rem. Right. I used up a great deal of your time, so take a few more minutes on the younger issue. Could I ask Mr. Strumwasser a question? Mr. Strumwasser, as I get this argument, it seems that the commissioner here has sought the conservation remedy because CIC had the effrontery to merge without permission. This wasn't a case where there was a threatened bankruptcy or financial disaster that caused the conservation. So why isn't Mr. Kaplan correct that the commissioner should have used another tool such as an injunction against the merger rather than bring this action which gives him authority over all the assets of the company? It seems to me that there was overreach here. Let me start my answer with the words of this court in Bristol-Myers. A federal court inquiry into why a state attorney general in that case chose to pursue a particular case or into the thoroughness of the state's pre-filing investigation would be entirely at odds with Younger's purpose of leaving state governments free to perform their separate functions in their separate ways. That is a true affront to the, that is an undertaking that this court has never wanted to take in reviewing why the prosecutor chose one versus another remedy. So you're saying that Mr. Kaplan has his day in court in San Mateo. He can raise his constitutional claims there. Absolutely. Okay. And secondly, I want to make sure that it's clear that we thought that there were, for good and sufficient reasons, that injunctive relief was not adequate in a transaction that was worth several hundred million dollars in which it was not clear to us what remedies we would have available if they just violated. Sure, we can get a contempt filing, but what would that do? And what would that do for the policyholders? Thank you. Thank you, Your Honor. My, I will give the hyper-abbreviated Younger pitch here, which is that when a court is asked to, when a federal court is asked to enjoin a pending state proceeding of this kind, the normal thing to do is not to issue the injunction. There is a court proceeding? I mean, the Supreme Court has kind of fattened down the reach of Younger, finally, and so you have to demonstrate essentially that this is fairly akin, that this is some sort of a civil enforcement proceeding. Right. Fairly narrowly defined. Now, suppose this was a conservatorship for financial problems. Would that count? Absolutely. Sure. Why? Because insurance companies are exempt from any bankruptcy law. You've got to have an orderly system to resolve competing claims. That's true, but it's in no sense a sanction or a penalty or akin to a criminal proceeding in any way. It's like a bankruptcy case, a bankruptcy case, presumably, or a state receivership or trusteeship or something like that. But I want to push back on the notion that it has to be, there has to be a criminal sanction. No, I didn't say it has to be a criminal sanction. It has to be an enforcement proceeding in some fashion. It has to be an enforcement proceeding in which important state interests are involved. And, in fact, what Middlesex said was that the significance of the existence of a criminal penalty is that that attests to the fact that it is important for the state. That is an indicator. It is not a requirement. And, in fact, as Your Honor's question suggested, Middlesex wasn't the criminal prosecution at all. Now, the appellants have argued, well, but there was – If I may, I thought we are now in the world in which before you get to the Middlesex factors, there is a separate inquiry as to whether this is within the categories of state proceedings that are covered by Younger at all. Fair enough. And the answer is that it is a civil enforcement proceeding because of the interests that the state has in the insurance matters. The cutting back of Younger by Sprint was actually a tuning in which Sprint made it clear that Younger is not available to private actions between a plaintiff and a defendant. That abstention is really about actions by the government. And it gave us our five factors to look at and said, these are not a checklist you have to check, but all five of them are, in fact, satisfied here. They were initiated by a federal plaintiff who is a party. There was for a wrongful act. The state actor is a party to the proceeding. But that's why I asked you about the financial insolvency alternative, which is most of these conservatorships where I don't think you say there's a wrongful act. Oh, absolutely there was. No, in this case I understand it, but that's why I asked you how broad your contention is, whether it applies to financial insolvency cases, which is most of them. Fair enough. And the answer is that when you accept a certificate of authority to engage in the business of insurance, one of the things you accept is a responsibility to remain financially solvent and capable of responding to claims on your insurance policies. And if you don't do that, you have engaged in wrongful conduct, probably unintentionally, usually unintentionally, just bad management of your business or something else. But it is your obligation to maintain capital necessary to meet your policyholders' demands and other creditors' demands. And if you fail that obligation, you have done something wrong. All right. Well, thank you very much. We let you go on because we were not letting you go on. If you're dying to say anything else, you'll have a sentence or two. I appreciate the offer, Your Honor. I appreciate the Court's generosity with the time. We ask that the Court affirm. Thank you very much. Mr. Kaplan, let's say three minutes because you gave your opponent a fair amount of time. Thank you, Your Honor. First, a very simple point. They don't have any answer to the fact that the applied plaintiffs have property and liberty interests at issue here that are not part of the conservation estate. And for that reason alone, the prior exclusive jurisdiction doctrine can't apply. Even if Your Honor concluded both proceedings were in round, this property is not in the custody of anyone. What do you mean by that? I'm sorry. I don't understand. They have property interests, promissory notes that were never brought into the conservation estate. So no court is exercising jurisdiction over them, even if you assume the state court is exercising interim jurisdiction, even if you assume we're asking the federal court. But is that because we have these closely affiliated companies, so you're claiming separate interests by one company and the response is, well, it's really all one company? Is that essentially where we are? No? I can't say that it's all one company. They are separately owned companies. They are subject to common management. But that's what the dispute is. It's whether it's how closely connected they are. Is that right? That, Your Honor, not for purposes of the prior exclusive jurisdiction argument. There is no legitimate argument that this property is subject to the conservation estate. What property are we talking about, Mr. Kaplan? I'm talking about the applied plaintiffs, Your Honor. There's two cases, applied and CIC2. And the applied plaintiffs, and this is a section of our, we address this in a section of our brief. You never heard, you heard a conclusive reassurance that they could raise the retaliation claim. Nobody ever told you how. Instead, there was a revealing exchange where counsel was required to admit that the anti-SLAAF proceedings, which is how you would normally bring a retaliation claim in California state court, are not available in conservation proceedings. Well, no, that's just an expedited way to do it, but you can still do it. You can't. There is no, there's a, there's a motion to vacate that, that has that it is based on two very specific state grounds and the rehabilitation plan hearing, which by the way, Your Honor, is at the end of the case. The applied plaintiffs can only bring a challenge at the end of the case after years of this company being in conservation and under Middlesex, it's gotta be a timely opportunity to raise, raise the claim. It's the end of the case and it's only about the rehabilitation plan. It's not about the initiation or maintenance of the conservation in the first instance. And they have no opportunity to develop the claim. My friend talked about all of the supposed great process. We're arguing about a privilege log two years in to a company that has been completely taken over, deprived of completely of their economic Liberty and that is facing these this ruinous rehabilitation plan. And Your Honor was spot on and asking about the other relief with here. We're not even just talking about the four settlement provisions. We're talking about the forced divestment of their entire California business. So this, these are ruinous sanctions that they are trying seeking to see. I understand. I thought, I thought it's the company that I was trying to move to New Mexico. The company was, the company was trying to move to New Mexico. And what they're trying to do is, but not, not get rid of all of their California business to an unaffiliated company, which is what the commissioner is seeking to force them to have to do. And it, presumably as I understand it, because that's California law, you have to be a California company to sell, to have insurance business in California. No, no, they could transfer to an affiliated, they could transfer it to an, even assuming there's no reason that they shouldn't give them the authority, but to, to practice in California, but even putting that aside, they can transfer to an affiliated company, which has California business. But because of the punitive nature of the sanction, they're trying, they are requiring them to transfer it to an unaffiliated company. So strip them of their business entire. This case is extremely complicated. You have both done a very good job of presenting your positions. And we thank you very much. Thank you, Your Honor. The California Insurance Company and Applied Underwriters v. Laura is submitted and we will take a break. Thank you very much.
judges: BERZON, BEA, NGUYEN